**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 19 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FAIR HOUSING CENTER OF WASHINGTON,

Plaintiff-Appellee,

v.

BREIER-SCHEETZ PROPERTIES, LLC, a Washington corporation and FREDERICK BREIER-SCHEETZ, an individual,

Defendants-Appellants.

No.    17-35898

D.C. No. 2:16-cv-00922-TSZ

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted October 10, 2018
Seattle, Washington

Before:  BLACK,[**] PAEZ, and BEA, Circuit Judges.

Breier-Scheetz Properties, LLC and Frederick Breier-Scheetz (collectively

"Breier-Scheetz") appeal the district court's judgment in favor of the Fair Housing

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Susan H. Black, United States Circuit Judge for the U.S. Court of Appeals for the Eleventh Circuit, sitting by designation.

Center of Washington ("Fair Housing Center"). The Fair Housing Center

challenged Breier-Scheetz's policy of restricting occupancy in certain studio

apartments to one-person-per-studio, arguing that this policy has a disparate impact

on families in violation of the Fair Housing Act, Washington Law Against

Discrimination, and Seattle Municipal Code. On appeal, Breier-Scheetz challenges

the district court's grant of partial summary judgment to the Fair Housing Center

as well as the district court's award of punitive damages. We affirm.

**1.** We review de novo the district court's grant of partial summary judgment

to the Fair Housing Center. *See Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443,

447 (9th Cir. 2018). In the district court, Breier-Scheetz admitted that the Fair

Housing Center established a prima facie case of disparate impact discrimination.

Thus, Breier-Scheetz was required to justify its one-person-per-studio occupancy

as "necessary to achieve one or more substantial, legitimate, nondiscriminatory

interests." 24 C.F.R. § 100.500.[1] This standard is analogous to the "business

necessity" defense under Title VII. *See Tex. Dep't of Hous. & Cmty. Affairs*, 135

---

[1] Under 24 C.F.R. § 100.500, when a plaintiff establishes a prima facie case of disparate impact, the burden of proof shifts to the defendant to prove—through evidence that is not speculative or hypothetical—that the challenged policy is "necessary to achieve one or more substantial, legitimate, nondiscriminatory interests." *See also Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2514–15 (2015) (recognizing 24 C.F.R. § 100.500 as establishing the liability framework for disparate impact claims brought under the Fair Housing Act); *Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 510 (9th Cir. 2016).

S. Ct. at 2522. Breier-Scheetz has never argued that its one-person-per-studio occupancy policy is necessary to achieve any substantial, legitimate, nondiscriminatory interest; Breier-Scheetz has only argued that its policy is reasonable.

The only evidence that Breier-Scheetz submitted to support the reasonableness of its policy—a declaration by part-owner Frederick Scheetz uncorroborated by any independent expert or supporting documentation—is too "hypothetical" and "speculative" to carry its burden of proof. 24 C.F.R. § 100.500(b). Thus, Breier-Scheetz has not met its burden of proof to rebut the Fair Housing Center's prima facie case of disparate impact discrimination. Accordingly, we conclude that the district court correctly granted partial summary judgment to the Fair Housing Center on its Fair Housing Act claim.

**2.** We review the district court's award of punitive damages for abuse of discretion and its factual findings underlying the award for clear error. *See Fair Hous. v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *In re Wolverton Assocs.*, 909 F.2d 1286, 1297 (9th Cir. 1990). We will only disturb a district court's award of punitive damages if we are "convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000).

A district court may award punitive damages for violations of the Fair

Housing Act where a defendant's unlawful activity "involves reckless or callous indifference to the federally protected rights of others." *Fair Hous.*, 285 F.3d at 906. Where a defendant engages in discrimination "in the face of a *perceived risk* that [his or her] actions will violate federal law," such conduct may constitute reckless indifference. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (emphasis added).

The district court, in its Findings of Fact and Conclusions of Law, concluded that Breier-Scheetz's "actions rise to the level of recklessness or callous indifference to the fair housing rights of others." The district court had the opportunity to observe the demeanor of part-owner and witness Frederick Scheetz and found that Scheetz recklessly ignored "several wake-up calls" that the one-person-per-studio policy infringed on families' fair housing rights. Scheetz testified at the bench trial on damages that Breier-Scheetz did not change the one-person-per-studio policy after the Seattle Office of Civil Rights found that the occupancy restriction violated fair housing laws. Breier-Scheetz also did not revise the policy when an expert opined that the restriction created a disparate impact on families. Finally, Scheetz testified that Breier-Scheetz did not change its occupancy policy in the four months between the district court's finding that Breier-Scheetz was violating the Fair Housing Act and the bench trial on damages. At that point, Breier-Scheetz did not just discriminate in the face of a *perceived*

4

*risk* that its actions would violate federal law; it continued to discriminate in the face of the district court's ruling that its policy violated the Fair Housing Act.[2]  We hold that the district court's findings were not clearly erroneous and, consequently, the court did not abuse its discretion in awarding punitive damages.

Because we affirm the district court's finding of liability and grant of relief solely with reference to the Fair Housing Act claim, we do not address the Fair Housing Center's state or local claims of housing discrimination.

**AFFIRMED.**

---

[2] The district court also entered an injunction on October 6, 2017, ordering Breier-Scheetz to change its occupancy policy.  Though not relevant to our review of the district court's award of punitive damages, as of the date of oral argument on October 10, 2018, Breier-Scheetz still had not complied with the injunction by changing its occupancy policy.



Fair Housing Center of Wash. v. Breier-Scheetz Properties, LLC, et al, 17-35898

BEA, Circuit Judge, dissenting in part:

I agree with the majority that the district court correctly granted partial summary judgment to the Fair Housing Center on its Fair Housing Act ("FHA") claim against Breier-Sheetz. Under 24 C.F.R. § 100.500, Breier-Sheetz was required to justify its one-person-per-studio occupancy policy as "necessary to achieve one or more substantial, legitimate, nondiscriminatory interests." Breier-Sheetz did not make such a showing, and even conceded on appeal that it would not prevail under such a standard.[1]

I disagree with the majority on the issue of punitive damages. This court has held that punitive damages may only be awarded for violations of the FHA when a defendant's unlawful activity "is shown to be motivated by evil motive or intent," or when it "involves reckless or callous indifference to the federally protected rights of others." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (importing the punitive damages standard from the § 1983 context). This is similar

---

[1] Instead, Breier-Sheetz argued that a "reasonableness" standard applied to the rebuttal of a prima facie showing of disparate impact discrimination under the FHA, primarily citing an internal guidance document from the Department of Housing and Urban Development. Although Breier-Sheetz's arguments were not completely unfounded, they were ultimately unavailing.

1

to the standard applicable under both Title VII and the Americans with Disabilities Act, where punitive damages are "limited . . . to cases in which [the defendant] has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. American Dental Association*, 527 U.S. 526, 529-30 (1999) (internal quotations and citations omitted) (noting that "[t]he terms 'malice' and 'reckless' ultimately focus on the actor's state of mind").

The majority accuses Breier-Sheetz of "recklessly ignor[ing] 'several wake-up calls' that its policy infringed on families' fair housing rights." The "wake-up calls" that Breier-Sheetz purportedly ignored—resulting in a finding of "reckless or callous indifference"—include: (1) the filing of a complaint against Breier-Sheetz with the Department of Housing and Urban Development; (2) the issuance of a report by the Seattle Office of Civil Rights finding that Breier-Sheetz's occupancy policy had a disparate impact on families; (3) the filing of a complaint against Breier-Sheetz in federal court; (4) the issuance of a disparate impact report by plaintiff's expert; and (5) the district court's grant of summary judgment against Breier-Sheetz on FHA liability (importantly, issued *before* it conducted a bench trial to determine remedies such as injunctive relief).

Breier-Sheetz did not ignore any "wake-up calls." It was simply unwilling to change a longstanding and reasonable business policy—which Breier-Sheetz

2

maintained was legal—until ordered to do so by a court. [2]  It cannot be the case that in order to avoid being subjected to punitive damages, a business must immediately change its policies whenever it is accused of misconduct by an advocacy group or an administrative agency, rather than insist that the group or agency prove liability in a court of law.  A defendant similarly cannot be subjected to punitive damages for failing prophetically to cease conduct that is *only subsequently* enjoined by a court order.

None of the district court's findings in this case come close to evincing the "reckless or callous indifference" required to award punitive damages under the FHA.  In *Fair Housing of Marin*—where this court rightly upheld an award of punitive damages against a landlord for an FHA violation—there was evidence that the landlord treated black applicants to his apartment complex differently than white applicants, stated that he wanted an "all-white building," used "offensive and racially derogatory language when telling several tenants he did not want to rent to African-Americans," and stated that "he could use the pretext of bad credit to

---

[2] The district court characterized Breier-Sheetz's single-occupancy policy as "arbitrary," but the policy had at least several reasonable justifications, including that single occupants tend to stay in apartments longer, thereby reducing tenant turnover, which is expensive for landlords; and that single occupants generally cause less wear-and-tear on small apartments.  That Breier-Sheetz ultimately failed to show that the policy was a business necessity does not make the policy "arbitrary," and certainly does not by itself evince a reckless or callous indifference to the rights of others.

refuse to rent to African-Americans." *Fair Housing of Marin*, 285 F.3d at 907. Breier-Sheetz's conduct with respect to its single-occupancy policy is not in the same category as the landlord's conduct in *Fair Housing of Marin*, and it does not justify an award of punitive damages.

Because I would hold that the district court abused its discretion in awarding punitive damages, I dissent as to that section of the memorandum disposition. I otherwise join the disposition in full.